UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 20-CV-80262-RS

VENTRON MANAGEMENT, LLC,

          Plaintiff,

vs.

TOKIO MARINE SPECIALTY
INSURANCE COMPANY; AMERICAN
GUARANTEE & LIABILITY INSURANCE
COMPANY,

          Defendants.

_____/

**VENTRON'S MOTION TO COMPEL TOKIO MARINE AND ZURICH TO PRODUCE
DOCUMENTS RESPONSIVE TO ITS FIRST REQUESTS FOR PRODUCTION**

Ventron filed this action seeking damages for breach of contract and judicial declarations that either its primary commercial general liability insurer, Defendant Tokio Marine ("Tokio"), and/or its excess commercial general liability insurer, Defendant AGLIC ("Zurich"), owe duties to defend and indemnify Ventron in two separate cases pending against Ventron in Georgia, styled as (1) *AG v. Ventron Management, LLC, et al.*, Case No. 18-EV-001064 ("*AG*")  and (2) *Silvery v. Ventron Management, LLC et al.*, Case No. 2020-CV-00551 ("*Silvery*").

As against Tokio, Ventron seeks a declaration that its primary policy has not been exhausted by payment of defense costs and indemnity, such that it owes continuing obligations to defend and indemnify Ventron in *AG* and *Silvery*.  Tokio claims that because it has paid $1,000,000 in connection with claims alleging assault or battery on Ventron-managed properties, it has exhausted its $1,000,000 "assault and battery" sublimit.  Ventron claims that sublimit is ambiguous for several reasons, including whether its purported application to "bodily injury" "resulting from assault and/or battery **only**" extends to claims alleging other causes of injury such as negligent surveillance, management and security.  Ventron also claims that even if Tokio's $1,000,000 assault and battery sublimit applies to *AG* or S*ilvery*, a separate $1,000,000 sublimit applies to each location pursuant to the Tokio Policy's "Designated Location General Aggregate Limit"

endorsement.

When Tokio claimed it exhausted its applicable policy limit through payments on *AG* and other similar matters in April 2019, Zurich as excess insurer contributed indemnity dollars to settle one such matter and took over Ventron's defense in *AG* without reservation.  Nearly ten months later, on February 4, 2020, Zurich reversed course, denied coverage for *AG*, withdrew from Ventron's defense, and instructed Ventron to appoint and pay for its own counsel on the basis that its "Sublimited Coverage Exclusion" precluded coverage for any claims (including "assault and battery" claims) subject to a sublimit under the Tokio primary policy.  Zurich also denied any responsibility for the pre-suit demand (which blossomed into a lawsuit following Zurich's denial) in *Silvery*. After being sued here, Zurich reversed course again, resuming Ventron's defense in the *AG* case without reservation.  Despite there being no material difference in the allegations, Zurich's position on *Silvery* remains unchanged.

Ventron seeks declarations against Zurich that by its acts and omissions it has either waived or is estopped from denying coverage as to *AG* and *Silvery*, or, alternatively, that its excess policy is triggered by the circumstances of *AG* and *Silvery*.  As part of that effort, Ventron seeks to inquire into (1) what Zurich intended to underwrite when it knew of Ventron's exposure to claims for assault and/or battery-related bodily injury, (2) why Zurich provided coverage for the (now-settled) *Chambers* case and *AG* case (without reservation), (3) why Zurich changed its mind nearly a year later, (4) the communications Zurich had with third parties (and thus what admissions Zurich made) concerning coverage, and (5) what Zurich did and did not do while in control of Ventron's defense and settlement of *AG* and whether those acts prejudiced Ventron.

In the search for admissible evidence as to the issues pled, Ventron propounded separate requests for production on each carrier on September 4, 2020, seeking the following documents and communications: (1) claim file materials and communications, including claim notes; (2) to the extent not found in the claim files, internal communications from each carrier regarding each carriers' policy or the claims at issue; (3) documents resident in each carriers' underwriting file; and (4) documents interpreting the policy provisions, exclusions, and endorsements at issue in this case.  Zurich and Tokio responded on October 22, 2020 and November 3, 2020, asserting numerous objections and withholding scores of documents.[1]

---

[1] Copies of Ventron's requests to Tokio and Tokio's responses and objections are attached as **Composite Exhibit A**.  An email summarizing the tentative agreements reached between Ventron

After extensive conferral, Tokio's counsel has indicated that she does not yet have authority to confirm, but believes Tokio will likely agree to produce its claim files and claims related communications with the exception of Tokio's claim notes or internal Tokio communications regarding the claims or policies. **Exhibit. B**. Tokio also resists production of its underwriting file and interpretive materials on relevance grounds. *Id.*[2]

Zurich has agreed to produce its claim file, claim notes, and communications and tentatively agreed to produce its underwriting file (subject to further review and redaction), but as of the date of this motion, is still in the process of gathering the documents for production.[3]

As set forth herein, Defendants' objections should be overruled.  The law of this District is clear that materials generated in connection with an insurance claim by an insurance company are not entitled to wholesale protection either on the basis of relevance or work-product immunity. Rather, a (rebuttable) presumption exists that documents created before a final claim decision is made are not protected work-product.  Neither Zurich nor Tokio have presented evidence to rebut this presumption. Nor could they, since they both agreed to defend the *AG* case and paid indemnity to settle other similar matters on behalf of Ventron. Nor has either Defendant provided a privilege log in compliance with the Local Rules so as to allow appropriate evaluation of any claimed privileges.  This alone amounts to a waiver of any claimed privilege or immunity.

While the interpretation of an insurance policy is a judicial function, interpretive materials bearing on the existence of more than one reasonable interpretation are discoverable, since under Florida law an insurance policy is ambiguous (and must be interpreted in favor of the insured) if more than one reasonable interpretation exists.  Underwriting materials are likewise discoverable

---

and Tokio regarding production and remaining issues is attached as **Exhibit B.**  Copies of Ventron's requests to Zurich and Zurich's responses and objections are attached as **Composite Exhibit C**. An email summarizing the tentative agreements reached between Ventron and Zurich regarding production and remaining issues is attached as **Exhibit D**.

[2] Ventron and Tokio have agreed to continue the conferral process while this motion is pending, and will notify the Court of any further agreements reached pursuant to the Local Rules and this Court's discovery procedures.  *See* D.E. 21.

[3] *See* **Exhibit D**. Ventron seeks relief here against Zurich out of an abundance of caution, given the impending discovery and motion deadlines under Rule 26.1(g).  The parties have sought either an extension of these deadlines or a stay of the case, but as of the date of this motion, Judge Smith has yet to rule on the parties' joint request.  *See* D.E. 33.

where, as here, the positions taken by the carriers ignore the principal risk insured and undermine the purpose for which the insured purchased these policies.

## ARGUMENT AND MEMORANDUM OF LAW

I.      **Tokio and Zurich's Internal Claim File Documents are Discoverable and Not Protected by Immunity or Privilege.**

Insurers are not ordinary litigants; they are in the business of investigating and adjusting claims and making claims decisions informed by law.  Their actions in evaluating claims or coverage are discoverable where coverage is at issue, and not ordinarily protected by work-product immunity.  *See, e.g., Milinazzo v. State Farm Ins. Co.*, 247 F.R.D 691, 702 (S.D. Fla. 2007); *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-81397-CV, 2015 WL 9257019 (S.D. Fla. Dec. 18, 2015) (Matthewman, Mag. J.); *Ranger Const. Indus. Inc. v. Allied World Nat'l Assurance Co.*, Case No. 17-81226-CIV-Marra/Matthewman, 2019 WL 436555 at *4 (S.D. Fla Feb. 5, 2019) (Matthewman, Mag. J.) ("This Court notes that *Milinazzo* provides an excellent, well-reasoned framework to analyze the work-product privilege in an insurance company context); *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 268 F.R.D. 695, 697 (S.D. Fla. 2010) (investigation of claims is an insurance company's business, justifying a special rule considering whether claim file materials prepared before a coverage denial are protected from discovery).

The so-called "*Milinazzo* rule" allows discovery of internal insurance company communications made – and documents generated – prior to the insurers' denial of coverage because these documents are presumed to be generated in the ordinary course of an insurer's business.  Tokio has made no effort to either rebut the *Milinazzo* presumption, or provide a privilege log pursuant to the Local Rules.  *Commercial Long Trading Corp. v. Scottsdale Ins. Co.*, No. 12-22787-CIV, 2012 WL 6850675 at *3 (S.D. Fla. 2012) (presumption can only be rebutted by specific evidentiary proof of objective facts showing documents were prepared in anticipation of litigation).

As applied to Tokio, the rule favors complete production of all documents withheld as to the *AG* matter (and the settled *Chambers* matter to the extent it bears on the Zurich-specific issues

in this case) prior to the filing of this lawsuit.[4]  To the extent documents generated before Tokio decided not to defend or indemnify Ventron in the Silvery case exist, they should also be ordered produced.

## II.   Interpretive Materials and Other Underwriting Documents are Discoverable as They Might Lead to the Discovery of Defendants' Interpretations of the Policy Favoring Coverage.

Where an insurance policy must be interpreted because certain provisions are alleged to be ambiguous, discovery is appropriate to ascertain an insurer's candid interpretations of disputed policy language that might aid the Court in determining whether the policy is subject to more than one reasonable interpretation, and therefore ambiguous.  As courts in this District have recognized, an insurers' underwriting file and interpretive materials may contain such evidence.  *See Del Monte Fresh Produce, B.V. v. ACE Am. Ins. Co*., No. 00-4792-CIV, 2002 WL 34702176 at *2 (S.D. Fla. Sept. 4, 2002); *Viking Yacht Co. v. Affiliated FM Ins. Co*., No. 07-80341-CIV, 2008 WL 8715540 at *2 (S.D. Fla. Feb. 7, 2008); *Mosley v. Am. Home Assur. Co*., No. 13-20259-CIV, 2013 WL 6190746, at *2 (S.D. Fla. 2013); *In re Certified HR Servs., Co*., Adv. Proc No. 10-3040-BKC-RBR at *4 (Bkr. S.D. Fla. Nov. 30, 2010) (interpretive materials show how an insurer interprets the provisions of its policy and whether ambiguity exists);[5] *Ironshore Indem. Co. v. Banyon 1030-32, LLC, et. al*., Case No. 12-CV-61678-Cooke/Turnoff (S.D. Fla. March 28, 2014) (interpretive materials are relevant and discoverable);[6] *National Cas. Co. v. United States Adult Soccer Ass'n, Inc., et al*., No. 15-24052-CIV-Martinez/Goodman (S.D. Fla. July 11, 2016) (allowing Rule 30(b)(6) deposition discovery on interpretation of ambiguous or potentially ambiguous policy terms, and underwriting decisions made as to disputed policy terms).[7]

Tokio drafted and sold to Ventron an endorsement which, according to Tokio, limits its liability for defense and indemnity for all claims "resulting from assault and/or battery only" to $1 million.  Ventron disputes Tokio's interpretation, and believes either this language applies to claims for "**only** assault and/or battery" but not other theories of liability against Ventron, or only

---

[4] Ventron does not seek privileged communications between Tokio and coverage counsel hired to defend it in this case, or Georgia-based coverage counsel who authored coverage position letters on Tokio's behalf after this case was filed.

[5] A copy of the decision in *In re Certified* is attached as **Exhibit E**.

[6] A copy of the decision in *Banyon* is attached as **Exhibit F**.

[7] A copy of the decision in *National Casualty* is attached as **Exhibit G**.

applies as to each insured location under Tokio's policy.  Under either interpretation, Tokio would continue to owe defense and indemnity obligations in *AG* and *Silvery*.  Underwriting and interpretive documents bearing on how Tokio's policy language operates would lead to the discovery of relevant evidence here.

## CONCLUSION

For the foregoing reasons, Ventron respectfully requests that this Court compel Tokio (and to the extent not produced by agreement, Zurich) to produce documents responsive to Ventron's requests for production as set forth herein.

Dated this 20th day of November, 2020.

Respectfully submitted,

**REED SMITH LLP**
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Telephone: (786) 747-0200
Fax: (786) 747-0299

*/s /Christopher T. Kuleba*
**Matthew B. Weaver**
Florida Bar No. 42858
mweaver@reedsmith.com
**Christopher T. Kuleba**
Florida Bar No. 105302
ckuleba@reedsmith.com

*Counsel for Plaintiff*

## CERTIFICATION OF GOOD FAITH EFFORT TO CONFER

Pursuant to Local Rule 7.1(a)(3), counsel for Ventron Management, Inc. certifies that they have conferred with counsel for Tokio Marine Specialty Insurance Company and American Guarantee & Liability Insurance Co., by phone for several hours on November 3, 2020, and November 12, 2020, and by email on several occasions between October 23, 2020 and November 7, 2020,  the results of which are reflected in Exhibits B and D attached hereto.

*/s/ Christopher T. Kuleba*
**Christopher T. Kuleba**

CASE NO.: 20-CV-80262-RS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 20, 2020, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is

being served this day on all counsel of record identified below via transmission of Notice of

Electronic Filing generated by CM/ECF.

| | |
|---|---|
| **Lauren S. Curtis, Esq.**<br>TRAUB LIEBERMAN<br>360 Central Ave. 10th Floor<br>St, Petersburg, FL 33701<br>Telephone: (727) 898-8100<br>Facsimile: (727) 895-4838<br>Email: lcurtis@tlsslaw.com | **Bradley S. Fischer, Esq.**<br>**Laura F. Farrant, Esq.**<br>LEWIS BRISBOIS BISGAARD<br>& SMITH LLP<br>110 SE 6th Street, Suite 2600<br>Fort Lauderdale, Florida 33301<br>Telephone: 954.728.1280<br>Facsimile: 954.728.1282<br>Email: bradley.fischer@lewisbrisbois.com<br>laura.farrant@lewisbrisbois.com |
| *Counsel for Tokio Marine Specialty Insurance Company* | *Counsel for American Guarantee & Liability Insurance Company* |

/s/ *Christopher T. Kuleba*
**Christopher T. Kuleba**