E
X
H
I
B
I
T

F

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-CV-61678-COOKE/Turnoff

IRONSHORE INDEMNITY, INC.,

    Plaintiff,

vs.

BANYON 1030-32, LLC, BANYON
FUNDING, LLC, BANYON CAPITAL,
LLC, BANYON INVESTMENTS, LLC
(NEVADA), BANYON RESOURCES,
LLC, BANYON INCOME FUND, LP,
and BANYON USVI, LLC,

    Defendants.

_____/

## **OMNIBUS ORDER**

**THIS CAUSE** came before the Court upon various discovery motions. These matters were

referred to the undersigned by the Honorable Marcia G. Cooke, United States District Judge for the

Southern District of Florida. (ECF No. 23). A hearing was held before the undersigned on October

1, 2013. (ECF No. 199). The Court has considered the written and oral arguments, the record, the

applicable law, and is otherwise duly advised in the premises.

### **Background**

This is an action by Plaintiff Ironshore Indemnity, Inc., for declaratory judgment and

rescission of a commercial crime insurance policy issued to Banyon 1030-32, LLC, and the other

Banyon Entities named as Defendants, covering theft of Banyon's funds by Scott Rothstein. The

Insurers sought confirmation that the insurance policies were null and void due to material

misrepresentations and omissions and for declaratory relief that the Banyon Entities did not sustain a loss covered by the insurance policies. The Banyon Entities denied that their underwriting submission contained misrepresentations or omissions, asserted affirmative defenses, and asserted a counterclaim alleging that the Insurers breached the policies.

Involuntary Chapter 7 bankruptcy proceedings were initiated against Defendants Banyon 1030-32, LLC–the parent corporation of all the Banyon Entities–and Banyon Income Fund, LP. Robert C. Furr, was appointed as Trustee on behalf of Banyon 1030-32, LLC, and Banyon Income Fund, LP. Several of the other Banyon Entities, including Banyon Capital LLC, Banyon Funding LLC, Banyon Investments LLC, Banyon Resources LLC, and Banyon USVI (DEL) LLC, are not in bankruptcy.

The Trustee has filed several motions to compel against various insurance companies: (1) Federal Insurance Co. (ECF No.134); (2) RLI Insurance Co. (ECF No. 141); (3) Columbia Casualty Co. (ECF No. 142); (4) Zurich American Insurance Co. (ECF No. 143); (5) Westchester Fire Insurance Co. (ECF No. 151); (6) St. Paul Fire & Marine Insurance Co. (ECF No. 156); and (7) Ironshore Indemnity Co. (ECF No. 159). In the majority of the motions, the Trustee seeks production of the following categories of documents: (a) underwriting guidelines and materials; (b) lawyer's professional liability underwriting materials; © reinsurance materials; (d) interpretive materials; and (e) documents withheld pursuant to privilege logs. The Trustee argued that the boilerplate objections raised by the Insurers on relevancy, undue burden, vagueness and over-breadth should be overruled as insufficient. Moreover, the Trustee argued that the privilege logs submitted by the insurers were insufficient to establish the application of various claimed privileges. Most of the arguments for the categories of documents sought by the Trustee are the same for all the insurers and shall be addressed

together.

## Law

"The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985). Relevancy is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Henns v. Mony Life Ins. Co. of America, No. 5:11-cv-55-Oc-37TBS, 2011 WL 5358423, at *5 (M.D. Fla. 2011) (citations omitted). Indeed, Rule 26(b)(1) states in pertinent part: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

With respect to privileged, the claiming party bears the burden of proof as to applicability. Adelman v. BSA, 276 F.R.D. 681, 689-90 (S.D. Fla. 2011). "That burden is not, of course, discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965). Privilege logs should identify documents and/or communications with sufficient detail to determine the applicability of any privilege. CSX Transp., Inc. v. Admiral Ins. Co., No. 93-132-CIV-J-10, 1995 WL 855421, at *3 (M.D. Fla. Jul. 20, 1995). The party seeking to shield discovery must supply the court with underlying facts supporting the existence of the privilege, which may be done by affidavit. United States v. Osborn, 561 F.2d 1334, 1339 (9th Cir. 1977). However, "[u]nless the affidavit is precise to bring the document within the rule, the Court has no basis on which to weigh the applicability of the claim of privilege."

International Paper Co. v. Fibreboard Corp., 63 F.R.D. 88, 94 (D. Del. 1974). Moreover, "submitting a batch of documents to the Court *in camera* [does not] provide an adequate or suitable substitute because the Court is often without information of what the document concerns or how it came into being or other relevant information which would enable it to determine whether the documents are privileged." Id.

The attorney client privilege attaches when the primary purpose of the communication was to obtain legal, rather than business, advice. In re Denture Cream Products Liability Litigation, No. 09-2051-MD, 2012 WL 5057844, at *6 (S.D. Fla. Oct. 18, 2012) (collecting cases). The burden is on the party asserting the privilege. In re Seroquel Products Liability Litigation, No. 6:06-md-1769-ORL-22DAB, 2008 WL 1995058, at *4 (M.D. Fla. May 7, 2008) (citations omitted). Moreover, the fact that a communication is made between corporate employees who are not attorneys is not determinative of whether that communication is subject to attorney client privilege. In re Denture Cream, 2012 WL 5057844, at *13. By the same token, communications in which an attorney is merely copied are not automatically entitled to protection. In re Seroquel, 2008 WL 1995058, at *1.

The work product doctrine shields from production materials generated in anticipation of litigation at the time they were drafted. CSK Transp., Inc. v. Admiral Ins. Co., No. 930132-CIV-J-10, 1995 WL 855421, at *2 (M.D. Fla. Jul. 20, 1995). Once again, the burden is on the party asserting the protection. In re Denture Cream, 2012 WL 5057844, at *7. For the work product doctrine to apply, it is not necessary that litigation have already commenced. Id., at *14.

"[T]he common interest privilege applies when clients with separate attorneys share otherwise privileged information in order to coordinate their legal activities." In re Ginn-LA St. Lucie Ltd., LLLP, 439 B.R. 801, 805 n.4 (Bankr. S.D. Fla. 2010). It "allows parties who share

Page 4 of 13

unified interests to exchange privileged information to adequately prepare their cases without losing the protection afforded by the privilege." Fries v. Teaford Co., Inc., No.5:12-CV-37-RS-CJK, 2012 WL 3966382, at \*2-3 (N.D. Fla. Sept. 11, 2012) (citations omitted). For the privilege to apply, a party must show an agreement (not necessarily in writing) to cooperate through a common enterprise towards an identical legal strategy; that the communications were given in confidence as reasonably understood by the client; and that the joint strategy was more than just one side's impression. Pensacola Firefighters' Relief Pension Fund Board of Trustees v. Merrill Lynch, Pierce, Fenner & Smith, No. 3:09-cv53/MCR/MD, 2011 WL 3512180, at \*6 (N.D. Fla. Jul. 7, 2011).

## Discussion

Upon review of the discovery requests under the general framework outlined above, as well as upon consideration of the arguments of the parties and the materials cited in support thereof, the Court overrules all relevance objections. Moreover, the Court finds that the requests have not been shown to be overly broad or unduly burdensome, and appear to be reasonably calculated to lead to the discovery of admissible evidence. As noted above, discovery under Fed. R. Civ. P. 26 is broad. To the extent that responsive documents have been withheld by any insurance company on the basis that they are not relevant, same must be produced forthwith. Where the producing party has indicated that no responsive documents exist, the response is sufficient.

With respect to underwriting guidelines and materials and lawyer's professional liability underwriting materials, both applicable to the Policy and also to other forms for commercial crime policies and fidelity bonds, these must be produced forthwith to the extent they exist. The policies at issue herein insured the risk of theft of Banyon's funds by Banyon's own employees and the RRA law firm. The undersigned agrees with the Trustee that any underwriting guidelines and materials

Page 5 of 13

governing or relating to that risk are discoverable. Also relevant are the lawyer's professional liability underwriting materials because the policy insured the risk of theft by both Banyon and the RRA law firm. Moreover, the undersigned finds that all of these materials are pertinent to a rescission action where claims of misrepresentation by the insured have been raised. In any case, these materials may lead to the discovery of relevant evidence.

With respect to reinsurance materials, the undersigned finds that they are relevant to defending against a claim of misrepresentation. At least one insurer argued that Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp., 268 F.R.D. 692, (S.D. Fla. 2010), held that reinsurance communications were not relevant or discoverable. The undersigned is not persuaded by Royal Bahamian because it was in the context of a coverage dispute, not a rescission action. Thus, to the extent that they exist, reinsurance materials must be produced forthwith.

With respect to interpretive materials, these are also discoverable under the broad strokes of the discovery rules. Whether the Trustee will be able to ultimately use at trial any of the information gathered is not the guiding consideration.

With respect to the various privilege logs, the Trustee has requested that the undersigned conduct an *in camera* review of the documents withheld by the insurance companies. The undersigned declines this request. See CSX Transp., Inc., 1995 WL 855421, at *5 (noting that *in camera* review should "not be used as a substitute for a party's obligation to justify its withholding of documents.") (citations and quotation marks omitted). As noted *supra*, the court is not in the best position to determine whether documents are privileged. International Paper Co., 63 F.R.D. at 94.

A.  **RLI**

RLI stated that it has no documents responsive to RFP's 14-23, 25-26, and 28. The Trustee

Page 6 of 13

seeks sanctions against RLI for not having disclosed this information before. That request is **Denied without prejudice** at this time.

As to the privilege log, RLI withheld Documents RLI 10988-0989, a communication dated 11/7/09, from RLI's claims counsel to RLI's VP of Claims, forwarding an email from outside counsel, claiming that it was a privileged attorney client communication. RLI also withheld Documents RLI 0980-0983 and RLI 1073-1075, dated 11/17/09 and 11/18/09 respectively, which were emails among the insurance companies and their attorneys regarding the Banyon Entities' misrepresentations, claiming that it contained attorney client communications and was shielded by the common interest protection. RLI argued that these parties had a common legal interest in responding to the Banyon Entities and rescinding the policies. RLI argued that the fact that litigation had not commenced at that point did not vitiate the confidential communications. The Trustee argued that, for the common interest privilege to apply, there had to be an agreement to cooperate through a common enterprise toward an identical legal strategy. The Trustee's position was that, pursuant to the privilege log submitted by another insurer, no such agreement existed until one month after the documents at issue were generated so that the assertion of such privilege was precluded. The Trustee argued further that RLI did not meet its burden of demonstrating when it reasonably anticipated litigation and that the affidavit provided by RLI was insufficient. Indeed, the undersigned notes that the affidavit submitted by RLI was silent regarding when RLI anticipated litigation or retained counsel. (ECF No. 175-1). However, the undersigned rejects any argument that no protection applies prior to the date that Razorback Funding LLC, a joint payee under the policy, filed suit, 12/30/09. See, In re Denture Cream, 2012 WL 5057844, at *14 ("litigation need not be already initiated in order for the work product doctrine to apply.").

Upon review of the privilege log, the undersigned finds that the descriptions provided by RLI are insufficient to allow determination of the applicability of the claimed privileges. Accordingly, RLI must provide an amended privilege log forthwith.

B. **Federal**

With respect to RFP's 19-24, Federal indicated that it would provide documents, but that there were no underwriting materials relating to or governing the issuance of commercial crime policies. To that extent, the Motion to Compel is Deemed Moot. However, the requests were broader as they included documents relating to the application for and negotiations over, not just the issuance of the policy. Federal must clarify whether it has additional responsive documents covering application and negotiation of the policy. If so, same must be produced forthwith. With respect to RFP 31, Federal claimed that no documents existed "of the type sought in this Request." That type of response suggests that other materials may exist. Federal must clarify its response to RFP 31.

At issue are Documents 2-39 of Federal's privilege log, which are largely communications between Federal's outside counsel and Federal's claim and underwriting personnel occurring between the date the claim was reported, 11/2/09, and the date on which Federal was sued by Razorback, 12/30/09. According to Federal, these documents, except one, concerned legal advice being provided by Federal's outside counsel who was not retained to conduct an investigation of the claim. Federal argued that it anticipated litigation no later than 11/6/09, the date the claims adjuster decided that Federal needed to retain outside counsel, and that no documents were withheld on work product grounds prior to this date. Federal submitted an affidavit in support which the Trustee argued was insufficient. According to the affidavit, the claims examiner decided that outside counsel needed to be retained on 11/6/09, although he did not seek formal permission until 11/12/09. (ECF No. 153-

Page 8 of 13

2). The undersigned rejects the Trustee's argument that protections do not apply prior to 12/30/09, the date that Razorback instituted its suit. See, In re Denture Cream, 2012 WL 5057844, at *14.

The undersigned finds that the privilege log is insufficient. Federal must provide more detailed information forthwith, particularly as to item 23.

C.  **Columbia**:

According to Columbia, it has no documents responsive to RFP's 14, 15-20, 25 and 28. In this regard, the motion is Deemed Moot.

With respect to the privilege log, at issue are Documents 0289, 0858, 0862, 0891, and 0911-12. The Trustee argued that they are discoverable because documents 289, 858, 862 and 891 were drafted between the date the claim was reported, 11/2/09, and the date Columbia was sued by Razorback, 12/30/09, since Columbia had not yet denied the claim or sought rescission. In support, Columbia submitted the affidavit of Scott L. Schmookler, Esq., counsel for Columbia. (ECF No. 142-1). Schmookler stated that, based upon his personal knowledge, the withheld documents reflected legal advice and/or legal opinions.

The undersigned finds that the descriptions in the privilege log, along with counsel's affidavit, are sufficient to establish the protection of the documents in question.

D.  **Zurich**:

According to Zurich, it did not have documents responsive to RFP's 14, 15-20, 25 and 28. In this regard, the motion is Deemed Moot.

With respect to the remaining categories, Zurich failed to produce requested discovery on the basis that it was not relevant. To the extent that the undersigned has addressed the same categories of production in previous motions, the same applies to Zurich. Zurich's relevance objections are

Page 9 of 13

overruled. Any documents responsive to the RFP's that have not been produced pursuant to such an objection must be produced forthwith.

There appears to be no privilege log of record filed by Zurich.

E. **Westchester**:

The rulings set forth above with respect to the other insurers apply to Westchester as well.

With respect to the privilege log, at issue are documents WFIC 0014, 0015, 0041, 000620 and 000629. According to the Trustee, these documents were either undated or were drafted between the date the claim was reported, 11/2/09, and the date the insurers were sued by Razorback, 12/30/09. Again, the undersigned rejects the Trustee's argument that documents drafted prior to Razorback's suit cannot be protected. Westchester submitted an affidavit indicating that it retained counsel in the days following the claim. (ECF No. 173-2).

The undersigned finds that the descriptions provided are not sufficient to determine the applicability of the claimed privileges. Accordingly, Westchester must provide an amended privilege log forthwith.

F. **St. Paul**:

The rulings set forth above with respect to the other insurers apply to St. Paul as well.

With respect to the privilege log, at issue are documents 2-6 and 8-9, which were withheld on the basis of work product. Document 4 was a document sent by an employee of Banyon's insurance broker and Documents 5 and 6 were sent from the Banyon Entities. St. Paul failed to identify the source of the documents 8 and 9. St. Paul claimed that it anticipated litigation no later than November 2, 2009, the same day the claim was reported. Although St. Paul claimed that it did not withhold any documents on work product grounds prior to November 2, 2009, the Trustee argued

that the initial call with the insured did not occur until two days later, on November 4, 2009.

No affidavit was offered in support. Upon review, the undersigned finds that the privilege log is insufficient to allow determination of the applicability of the claimed privileges. Accordingly, St. Paul must provide an amended privilege log forthwith.

G.      **Ironshore**:

The rulings set forth above with respect to the other insurers apply to Ironshore as well.

With respect to the privilege log, at issue are documents 199-200, 202, 219-220, and 228-229. Ironshore submitted the affidavit of Michael Adler, VP of Claims for Ironshore. (ECF No. 178-3). Adler stated that Ironshore retained outside counsel the day after the claim was reported, which was one day prior to the conference call among the insurers. Adler's affidavit directly addressed the withheld documents.

The privilege log does not provide sufficient detail. As such, an amended privilege log must be provided forthwith.

With respect to any remaining issues with the applicability of a privilege to withheld documents, the parties are directed to meet and confer under the caveat that any information divulged as part of the effort to establish a privilege claim shall not be construed as a waiver of those privileges. See, Campero USA Corp. v. ADS Foodservice, LLC, et al., 916 F.Supp.2d 1284, 1288 (S.D. Fla. 2012). The undersigned strongly urges the parties to resolve any further issues in this manner.

## Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The Trustee's Motion to Compel Production of Documents From Federal Insurance

Company (**ECF No. 134**) is **Granted in part and Denied in part**;

2.    The Trustee's Motion to Compel Production of Documents From RLI Insurance Company (**ECF No. 141**) is **Granted in part and Denied in part**.

3.    The Trustee's Motion to Compel Production of Documents From Columbia Casualty Company (**ECF No. 142**) is **Granted in part and Denied in part**.

4.    The Trustee's Motion to Compel Production of Documents From Zurich American Insurance Company (**ECF No. 143**) is **Granted in part and Denied in part**;

5.    The Trustee's Motion to Compel Production of Documents From Westchester Fire Insurance Company (**ECF No. 151**) is **Granted in part and Denied in part**;

6.    The Trustee's Motion to Compel Production of Documents From St. Paul Fire & Marine Insurance Company (**ECF No. 156**) is **Granted in part and Denied in part**;

7.    The Trustee's Motion to Compel Production of Documents From Ironshore Indemnity Company (**ECF No. 159**) is **Granted in part and Denied in part**; and

8.    Columbia Casualty Company's Motion to Compel Answers to Interrogatories (**ECF No. 139**) is **Granted in part and Denied in part**. Columbia served a set of interrogatories upon each of the Banyon Entities seeking the factual basis of the Banyon Entities' determination that the confidential settlements were legitimate and that they implemented safeguards to prevent a loss. According to Columbia, the Banyon Entities served a single, unverified response directing Columbia to documents, rather than a narrative response. Columbia argued that the Banyon Entities refused to confirm that the requested information was contained in the document production or to identify the specific responsive documents. At issue are the answers to Interrogatories No. 1, 3, 7, 8 and 14. Upon review, the Banyon Entities provided narrative answers, specifically referenced some

exemplary, responsive documents, and indicated that they lacked specialized knowledge. Columbia argued that the requested information was solely within the control of the Banyon Entities and was information that they would have used to form the allegations in the Complaint and the defenses to the rescission action. As to No. 1, Columbia asked how and when Levin requested verifications. The Banyon Entities referred to representative documents implying that there may be others among the hundreds of thousands of other documents produced in the case. As to No. 3, although the Banyon Entities answered that on the date of inception of Banyon 1030-32 Preve did not work or receive compensation pursuant to a written agreement, they pointed to one document which was a handwritten invoice submitted on a regular basis by Preve and Associates. As to No. 7 & 8, the Banyon Entities referenced representative examples without indicating if these were a complete universe of responsive documents. As to No. 14, Columbia sought identification of who drafted and/or received marketing materials provided by the Banyon Entities. Pursuant to Rule 33(d), of the Federal Rules of Civil Procedure, responding to interrogatories by way of general references to records is insufficient. Fed. R. Civ. P. 33(d)(1). The Banyon Entities must provide forthwith verified, amended answers to interrogatories No. 1, 3, 7 and 8, clarifying whether all responsive documents have been identified. The answer to No. 14 was sufficient but must be verified as well.

**DONE AND ORDERED** in Chambers at Miami, Florida, this ___ day of March 2014.

**WILLIAM C. TURNOFF**
**United States Magistrate Judge**