**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**WEST PALM BEACH DIVISION**

CASE NO.: 20-CV-80262-CANNON/BRANNON

VENTRON MANAGEMENT, LLC,

      Plaintiff,

vs.

TOKIO MARINE SPECIALTY INSURANCE
COMPANY, AMERICAN GUARANTEE &
LIABILITY INSURANCE COMPANY,

      Defendants.

_____/

**MOTION FOR SUMMARY JUDGMENT AGAINST**
**TOKIO MARINE SPECIALTY INSURANCE COMPANY**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................1

UNDISPUTED FACTUAL BACKGROUND ........................................................3

    I.    THE TOKIO POLICY ........................................................................4

        A.    The Tokio A&B Endorsement ....................................4

        B.    The Tokio Per-Location Limit Endorsement ............7

    II.    THE UNDERLYING ASSAULT AND BATTERY CLAIMS ................9

        A.    The AG / Las Palmas Lawsuit ................................10

        B.    Chambers / Birch Landing Lawsuit ........................10

        C.    Silvery / Scarlett Place Lawsuit ............................11

    III.    TOKIO'S INVESTIGATION AND DEFENSE AND APRIL 10, 2019 NOTICE OF EXHAUSTION ........................................................12

MEMORANDUM OF LAW ........................................................................14

    I.    TOKIO'S PER-LOCATION LIMIT ENDORSEMENT REQUIRES THAT A SEPARATE $1 MILLION AGGREGATE LIMIT BE APPLIED AT EACH PROPERTY. ........................................................14

        A.    A Separate Aggregate Limit Applies to *Las Palmas* and *Silvery* Because Occurred at Separate Designated "Locations" Under the Tokio Policy. ...15

CONCLUSION ........................................................................16

i

CASE NO.: 20-CV-80262-CANNON/BRANNON

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Auto-Owners Ins. Co. v. Anderson*,
    756 So. 2d 29 (Fla. 2000)................................................................................................14, 16

*Berkshire Life Ins. Co. v. Adelberg*,
    698 So. 2d 828 (Fla. 1997)....................................................................................................14

*Fayad v. Clarendon Nat'l Ins. Co.*,
    899 So. 2d 1082 (Fla. 2005)..................................................................................................14

*Jones v. Utica Mut. Ins. Co.*,
    463 So. 2d 1153 (Fla. 1985)..................................................................................................14

*Mt. Hawley Ins. Co. v. Dania Distribution Ctr., Ltd.*,
    763 F. Supp. 2d 1359 (S.D. Fla. 2011), *aff'd,* 513 F. App'x 890 (11th Cir.
    2013) ......................................................................................................................................14

*State Farm Fire & Cas. Co. v. CTC Dev. Corp.*,
    720 So. 2d 1072 (Fla. 1998)..................................................................................................14

*Westmoreland v. Lumbermens Mut. Cas. Co.*,
    704 So. 2d 176 (Fla. 4th DCA 1997) ....................................................................................14

ii

Plaintiff, Ventron Management, LLC ("Ventron"), pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 56.1, in the alternative to the request requested in Ventron's contemporaneously-filed motion for summary judgment as to Defendant American Guarantee & Liability Insurance Company ("Zurich"), moves this Court for entry of an order granting summary judgment against Defendant Tokio Marine Specialty Insurance Company's ("Tokio"), as follows:

## **INTRODUCTION**

This action arises principally out of Zurich's decision to abruptly and unexpectedly withdraw from Ventron's defense in the *Las Palmas* Lawsuit and deny indemnity for both *Las Palmas* and *Silvery* under Zurich's $25 million first-layer <u>excess</u> policy.  Zurich's excess policy sits directly on top of Tokio's primary commercial general liability policy and applies in excess of the "actual limits" or standard limits of the Tokio Policy.    The standard limits of the Tokio Policy are $1,000,000 per-"occurrence" and $2,000,000 in the aggregate.  Claims for negligent security arising out of an assault and battery on a Ventron-managed property, however, including *Las Palmas* and *Silvery*, are subject to limits of $1,000,000 per-claim and $1,000,000 in the aggregate per the Tokio Policy's "Assault and Battery Sublimit endorsement (the "A&B Endorsement").

In April 2019, after investigating and defending *Las Palmas* for nearly two years and three other assault and battery-based negligent security claims against Ventron for months, Tokio informed Ventron (and reiterated to Zurich) that it believed the $1,000,000 limit of the Tokio A&B Endorsement applied collectively to <u>all</u> such claims.  Tokio also informed Ventron and Zurich that ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████.

Zurich promised Ventron that it would defend and indemnify Ventron up to the full extent of its $25 million limits in all such claims, and proceeded to investigate *Silvery* and defend *Las Palmas*

1

without reservation for nine months until it, for the first time, denied coverage under a Zurich Policy exclusion for any claim subject to a "sublimit" under the Tokio Policy.

As set forth in Ventron's motion for summary judgment against Zurich, because Zurich's denial came more than two years after it received notice, nine months it confirmed coverage and assumed Ventron's defense ████████████████████████████████████████████, three weeks after the pleading amendment deadline expired, and four days after the close of discovery, Zurich is estopped from denying coverage as a matter of law.

Alternatively, Tokio's position that all assault and battery claims made against Ventron during the policy period are subject to a single $1,000,000 aggregate limit fails.  Under the Tokio Policy, for which Ventron paid a nearly <u>$400,000</u> premium, the $1,000,000 aggregate limit of the Tokio A&B Endorsement applies separately to each scheduled Ventron-managed property, including the Las Palmas, Birch Landing, and Scarlett Place Apartments where the *Las Palmas*, *Chambers*, and *Silvery* incidents took place.  Tokio opted to include a "Designated Location(s) General Aggregate Limit" endorsement (the "Per-Location Limit Endorsement") in its policy, which states that the standard aggregate limit of the Tokio Policy, which the Policy's A&B Endorsement modifies as to assault and battery claims, applies separately to each designated location and that "[a]ny payments made … shall reduce the [aggregate] limit for [only] that designated 'location'."

Because Tokio ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████.

CASE NO.: 20-CV-80262-CANNON/BRANNON

Tokio acknowledged Ventron's interpretation is reasonable when it informed Ventron that it was retaining defense counsel for *Birch Landing* and reminded Zurich of the Tokio Policy's A&B limit applicable to the pending assault and battery claims:



Tokio has yet to explain the basis for its current contrary position, but at a minimum Tokio's initial interpretation is evidence that the Policy, when read as a whole, is subject to more than one reasonable interpretation.  As a matter of Florida law, it must be construed in favor of coverage.

## UNDISPUTED FACTUAL BACKGROUND

Ventron is a property management company with management responsibilities for over twenty-two multi-family apartment complexes throughout Florida and Georgia. SOF ¶¶ 28-30.[1] Ventron's properties cater to families who often have difficulty obtaining housing due to their history, financial situation, or both. SOF ¶¶ 28-30. 

---

[1] "SOF" refers to Ventron's Statement of Undisputed Material Facts [ECF No. 88].

3

CASE NO.: 20-CV-80262-CANNON/BRANNON

I.      THE TOKIO POLICY

To protect itself from that risk at all twenty-two properties during the March 19, 2017 to March 19, 2018 policy period (the "Policy Period"), Ventron paid a $396,960.99 premium for the Tokio primary liability Policy. SOF ¶¶ 1-3. ████████████████████████████████

████████████████████████████████████████████ The Tokio Policy was bound and delivered to Ventron in Florida. SOF ¶¶ 1-2, 15-16.

Coverage A of the Tokio Policy requires the Tokio to "pay those sums that [Ventron] becomes legally obligated to pay as damages because of '**bodily injury**'" taking place during the "policy period" and caused by an "**occurrence**" and to "defend [Ventron] against any 'suit' seeking those damages." SOF ¶¶ 4-5. It is undisputed that *Las Palmas*, *Silvery*, and *Birch Landing* constitute claims for damages because of "bodily injury" taking place during the policy period and are each caused by an "occurrence," triggering Coverage A of the Tokio Policy. SOF ¶¶ 11-13, 92-94.

A.  **The Tokio A&B Endorsement**

The Tokio Policy's A&B Endorsement applies to claims for negligent security against Ventron based on an assault and battery taking place on Ventron-managed property. SOF ¶ 7. The A&B Endorsement states:

**ASSAULT AND BATTERY SUBLIMIT**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

**SCHEDULE**

| Assault and Battery Sublimits Defense Within the Limits | |
|---|---|
| Each Claim Sublimit of Insurance: | $1,000,000 |

4

CASE NO.: 20-CV-80262-CANNON/BRANNON

| Aggregate Sublimit of Insurance | $1,000,000 |
| --- | --- |

## I. COVERAGE

We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which the **LIQUOR LIABILITY COVERAGE FORM** applies; and to "bodily injury," "property damage," or "personal and advertising injury" to which the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** applies, resulting from assault and/or battery only, as described below.

**A.**   Assault and/or battery committed by any person;

**B.**   The failure to suppress or prevent assault and/or battery by any person;

**C.**   The failure to provide an environment safe from assault and/or battery or failure to warn of the dangers of the environment which could contribute to assault and/or battery;

**D.**   The negligent hiring, supervision, or training of any person that results in assault and/or battery;

**E.**   The use of any force to protect persons or property whether or not the "injury," "bodily injury" or "property damage" was intended from the standpoint of the insured or committed by or at the direction of the insured; and

**F.**   "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury.

We will have the right and duty to defend the insured against any "suit" seeking those damages.

Our right and duty to defend ends when we have used up the applicable sublimits of insurance shown in the endorsement **SCHEDULE**, in the payment of judgments or settlements or expenses for the coverage provided by this endorsement.

5

CASE NO.: 20-CV-80262-CANNON/BRANNON

II.     **EXCLUSIONS**

The following exclusions are deleted in their entirety:

A.      **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES:**

1.      **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Paragraph 2. Exclusions, a. Expected Or Intended Injury;**

2.      **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, Paragraph 2. Exclusions, a. Knowing Violation Of Rights Of Another; and**

B.      **LIQUOR LIABILITY COVERAGE FORM, SECTION I – LIQUOR LIABILITY COVERAGE, Paragraph 2. Exclusions, a. Expected Or Intended Injury.**

III.    **SUBLIMITS OF INSURANCE**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM** and **LIQUOR LIABILITY COVERAGE FORM, SECTION III – LIMITS OF INSURANCE** do not apply to coverage provided by this endorsement as the following provisions apply instead.

The most we will pay for damages because of "injury," "bodily injury," "property damage" or "personal and advertising injury" to which this endorsement applies are the Sublimits of Insurance stated in the endorsement **SCHEDULE** subject to the following:

A.      The Sublimits of Insurance shown in the endorsement SCHEDULE and the rules below fix the most we will pay regardless of the number of:

1.      Insureds;
2.      Claims made or "suits" brought; or
3.      Persons or organizations making claims or bringing "suits."

6

**B.**    The Aggregate Sublimit of Insurance is an aggregate per policy period, including defense costs;

**C.**    The Each Claim Sublimit of Insurance is subject to the Aggregate Sublimit of Insurance and is the most we will pay in any one claim.  All claims for damages made by one or more persons because of any one act or series of acts of assault and battery, including defense costs shall be deemed to be one claim.

**D.**    These Sublimits of Insurance include all defense costs and expenses related to this coverage.

**E.**    These sublimits are inclusive of and not in addition to the Each Common Cause and Aggregate Limits of the Liquor Liability Coverage Part and the Each Occurrence Limit and General Aggregate Limit of the Commercial General Liability Coverage Part.

Coverage provided by this endorsement does not provide additional limits of insurance above the Aggregate Limit shown in the Declarations; and any claims made or "suits" brought will serve to reduce that Aggregate Limit.

The Sublimits of Insurance provided by this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Sublimits of Insurance.

*Id*.

### B.  <u>The Tokio Per-Location Limit Endorsement</u>

Pursuant to the Tokio Policy's Designated Location(s) General Aggregate Limit Endorsement (the "Per-Location Limit Endorsement"), a separate aggregate limit applies at each designated "location":

**DESIGNATED LOCATION(S)**
**GENERAL AGGREGATE LIMIT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**    For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I – Coverage A, and for all medical expenses caused by accidents under Section I – Coverage C, which can be attributed only to operations at a single designated "location" shown in the Schedule above:

   **1.**    A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

   **2.**    The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage C regardless of the number of:

       **a.**    Insureds;

       **b.**    Claims made or "suits" brought; or

       **c.**    Persons or organizations making claims or bringing "suits".

   **3.**    Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

   **4.**    The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and

8

> Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.
>
> ...
>
> **E.** The provisions of Section **III** -- Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

SOF ¶ 8.

The Las Palmas, Scarlett Place, and Birch Landing Apartments where the assault and batteries giving rise to *Las Palmas*, *Silvery*, and *Birch Landing* took place, respectively, are designated "locations" under Tokio Policy subject to the terms of the Tokio Per-Location Limit Endorsement. SOF ¶¶ 9-10, 93.

## II.   THE UNDERLYING ASSAULT AND BATTERY CLAIMS

CASE NO.: 20-CV-80262-CANNON/BRANNON

████████████████████████████████████████████████████████████

█████████████████████████████████ ¶¶ █████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████ ¶¶ ████████████████████

████████████████ ¶ 94 ██████

### A.  **The AG / Las Palmas Lawsuit**

On or about April 19, 2017, Ventron ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████ ¶¶ ██████.

On March 18, 2018, AG sued Ventron in an action styled *A.G. v. Ventron Management, LLC, et al.*, Case No. 18EV001064 in the State Court of Fulton County, Georgia (the "*Las Palmas* Lawsuit") (the *Las Palmas* Claim and *Las Palmas* Lawsuit collectively, "*Las Palmas*").  The *Las Palmas* Lawsuit seeks to hold Ventron liable for, among other things, alleged negligent failures to control access to the premises, implement security, surveillance, and safety measures, and take appropriate action to deter foreseeable crimes. SOF ¶ 35, 92, 96. On February 1, 2019, AG amended her complaint to add additional detail about past crimes on the property. ECF No. 26-4.

*Las Palmas* seeks damages caused by a single "occurrence" attributable solely to operations at the Las Palmas Apartments. SOF ¶¶ 5, 30, 32-50, 87-88, 92-94, 96.

### B.  **Chambers / Birch Landing Lawsuit**

In April 2018, ████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████ ¶¶ ██████████ .

On June 18, 2018, Chambers' estate sued Ventron in an action styled *Kalliber Chambers, et al. v. Ventron Management, LLC, et al.*, Case No.  No. 18EV002855 in the State Court of Fulton County, Georgia (the "*Birch Landing* Lawsuit") (the *Birch Landing* Claim and *Birch Landing* Lawsuit collectively, "*Birch Landing*"). SOF ¶¶ 40.  Like the *Las Palmas* Lawsuit, the suit sought to hold Ventron liable for bodily injury caused by an assault allegedly made possible by Ventron's alleged negligent failures to control access to the Birch Landing Apartments, implement security, surveillance, and safety measures, ensure the property's front gate and security cameras were operable, and take appropriate action to deter foreseeable crimes. SOF ¶¶ 34, 40, 96.

*Birch Landing* sought damages caused by a single "occurrence" attributable solely to operations at the Birch Landing Apartments. SOF ¶¶ 13, 38-40, 92-93, 96. ██████████████

████████████████████████████████████████████████████████████

████████████ ¶¶ ██████████ .

**C.  Silvery / Scarlett Place Lawsuit**

On April 16, 2019, Ventron ████████████████████████████████████████

████████████████████████████████████████████████████████████ .

On March 9, 2020, Silvery sued Ventron in an action styled *Michaiah Silvery v. Ventron Management, LLC, et al.*, Case No. 2020CV00551 in the State Court of Clayton County, Georgia (the "*Scarlett Place* Lawsuit") (the *Silvery* Claim and *Silvery* Lawsuit collectively, "*Silvery*").  SOF ¶ 87.  The *Silvery* Lawsuit, like *Las Palmas* and *Birch Landing*, seeks to hold Ventron liable for bodily injury caused by an assault allegedly made possible by Ventron's alleged negligent failures to

maintain and control access to the Scarlett Place Apartments, implement security, surveillance, and safety measures, ensure the property's front gate and lights were operating properly, and take appropriate action to deter foreseeable crimes. SOF ¶¶ 11, 87; ECF No. 26-9.

*Silvery* seeks damage caused by an "occurrence" attributable solely to operations at the Scarlett Place Apartments. SOF ¶¶ 11, 38-40, 92-93, 96.

### III.   TOKIO'S INVESTIGATION AND DEFENSE AND APRIL 10, 2019 NOTICE OF EXHAUSTION

After receiving notice of the *Las Palmas* Lawsuit, Tokio investigated and began to defend Ventron. SOF ¶ 36-37.  Tokio appointed the law firm of Insley & Race LLC as defense Ventron's defense counsel. SOF ¶ 36.  Shortly thereafter, when Tokio received notice of the *Birch Landing* Lawsuit, Tokio likewise agreed to defend and assigned the law firm Carlock, Copeland & Stair, LLP as Ventron's defense counsel. SOF ¶ 42.

¶ 46.

Two weeks later, on April 10, 2019, Tokio sent a letter to Zurich and Ventron

¶ 47

███████████████████████████████████████████████████

█████████████████████████████████████████.

On April 30, 2019, ████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ ¶¶ ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ ¶ ██.

███████████████████████████████████████ ¶¶ █████████

█████████████████████████████ ¶ 61 ████████████████

█████████████████████████████ ¶ 61, 94. █████████████

█████████████████████ ¶¶ 62-64, 91-93, 95 ████████████

███████████████████ ¶ 63 ███████████████████████████

██ ¶ ████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ ¶ █.

Thereafter, █████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████, Zurich assumed Ventron's defense and indemnification in *Las*

*Palmas* and *Silvery* from Tokio until nine months later when it denied coverage under its Sublimit

Exclusion. SOF ¶¶ 47-77.

CASE NO.: 20-CV-80262-CANNON/BRANNON

## MEMORANDUM OF LAW

**I.      TOKIO'S PER-LOCATION LIMIT ENDORSEMENT REQUIRES THAT A SEPARATE $1 MILLION AGGREGATE LIMIT BE APPLIED AT EACH PROPERTY.**

The scope of an insurance policy's coverage is defined by the policy's language, the interpretation of which is a pure question of law. *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985).   The "insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer." *Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828, 830 (Fla. 1997).  Coverage grants are "construed in the broadest possible manner to effect the greatest extent of coverage," while "[e]xclusionary clauses are generally disfavored and are strictly construed to afford the broadest possible coverage."  *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997). Exclusionary clauses must be stated in clear, unmistakable language.  *Fayad v. Clarendon Nat'l Ins. Co.,* 899 So. 2d 1082, 1086 (Fla. 2005). "[C]ourts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).

Where a policy provision is subject to more than one reasonable interpretation, it is deemed ambiguous and must be construed in favor of coverage. *Id.*   "When an insurer fails to define a term … the insurer cannot take the position that there should be a narrow, restrictive interpretation of the coverage provided." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998).  When an insurer attempts to deny coverage on the basis of an exclusion, the insurer bears the burden to prove that the exclusion clearly and unambiguously applies to the loss. *Mt. Hawley Ins. Co. v. Dania Distribution Ctr., Ltd.*, 763 F. Supp. 2d 1359, 1364 (S.D. Fla. 2011), *aff'd,* 513 F. App'x 890 (11th Cir. 2013).

**A.  A Separate Aggregate Limit Applies to *Las Palmas* and *Silvery* Because They Occurred at Separate Designated "Locations" Under the Tokio Policy.**

Tokio included the "Per-Location Limit Endorsement to provide a separate aggregate limit at each designated "location."  That endorsement states, in part, that "all sums which the insured becomes legally obligated to pay as damages caused by 'occurrences' under Section I – Coverage A [including for 'bodily injury'] … which can be attributed only to operations at a single designated 'location' … [a] separate Designated Location Aggregate Limit applies at each designated 'location' [and] [s]uch payments shall not … reduce any other Designated Location General Aggregate Limit for any other designated 'location'…." *Id.*  Tokio – contrary to the interpretation it expressed to Ventron in June 2018 – disagrees with Ventron that a separate assault and battery aggregate limit applies to each property,  but has yet to explain why.

It is undisputed that the bodily injury damages at issue in *Las Palmas* and *Silvery* were each (1) caused by an "occurrence"; (2) that can be attributed only to operations at the particular apartment complex where the incidents occurred; and (3) are covered under Coverage A of the Tokio Policy.  It is also undisputed that the Las Palmas Apartments and Scarlett Place Apartments are separate designated "locations" subject to the Per-Location Limit Endorsement.

The language Tokio drafted further confirms that payments under Coverage A attributable to a single location reduce only the aggregate limit applicable to that location. The endorsement does not define the term "Designated Location Aggregate Limit," but states that it is "equal to the amount of the General Aggregate Limit shown in the [Tokio Policy] Declarations" and that the endorsement modifies Section III of the Tokio Policy ("Limits of Insurance").

As to assault and battery claims, Section III of the standard policy and the aggregate limit set forth in the Declarations is replaced with Section III of the A&B Endorsement and the A&B Endorsement states that its aggregate limit is "inclusive of … [the Policy's] <u>General Aggregate</u>

CASE NO.: 20-CV-80262-CANNON/BRANNON

Limit" shown in the declarations and that claims falling under the A&B Endorsement "serve to reduce that Aggregate Limit."  Thus, as to assault and battery claims, the Per-Location Limit Endorsement applies a separate $1,000,000 aggregate limit (instead of a $2,000,000 aggregate limit under the standard policy limits) at each designated location.

There is nothing in the Per-Location Limit Endorsement, the A&B Endorsement, or anywhere else in the Tokio Policy that suggests otherwise. ███████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████



███████.  Reading the Tokio Policy as a whole "to give every provision its full meaning and operative effect," Ventron's interpretation is – at minimum – reasonable, and Florida law requires that the Policy be construed in favor of coverage. *Anderson*, 756 So. 2d at 34.

## **CONCLUSION**

For the foregoing reasons, Plaintiff, Ventron Management, LLC respectfully requests that this Court enter an Order granting summary judgment in its favor, holding that, if Defendant American Guarantee & Liability Company does not have a duty to immediately defend and

16

CASE NO.: 20-CV-80262-CANNON/BRANNON

indemnify Ventron in *Las Palmas* and *Silvery*, Tokio must provide $1,000,000 of coverage for each of those claims, less any amounts already paid toward those claims.

<u>**REQUEST FOR ORAL ARGUMENT**</u>

Plaintiff, Ventron Management, LLC, respectfully requests a one (1) hour hearing on the matters raised in this motion for summary judgment and all associated briefing.

Dated this 7th day of May, 2021.

Respectfully submitted,

**REED SMITH LLP**
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Telephone: (786) 747-0200
Fax: (786) 747-0299

*/s/ Christopher T. Kuleba*
**Matthew B. Weaver**
Florida Bar No. 42858
mweaver@reedsmith.com
**Christopher T. Kuleba**
Florida Bar No. 105302
ckuleba@reedsmith.com

*Counsel for Plaintiff*

17

CASE NO.: 20-CV-80262-CANNON/BRANNON

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 7, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/*Christopher T. Kuleba*
**Christopher T. Kuleba**

## SERVICE LIST

**Lauren S. Curtis, Esq.**
TRAUB LIEBERMAN
360 Central Ave. 10th Floor
St, Petersburg, FL 33701
Telephone: (727) 898-8100
Facsimile: (727) 895-4838
Email: lcurtis@tlsslaw.com

*Counsel for Tokio Marine Specialty
Insurance Company*

**Bradley S. Fischer, Esq.**
**Laura F. Farrant, Esq.**
LEWIS BRISBOIS BISGAARD
& SMITH LLP
110 SE 6th Street, Suite 2600
Fort Lauderdale, Florida 33301
Telephone: 954.728.1280
Facsimile: 954.728.1282
Email: bradley.fischer@lewisbrisbois.com
laura.farrant@lewisbrisbois.com

*Counsel for American Guarantee &
Liability Insurance Company*

18